IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:08-CV-137-D

| | | |
|---|---|---|
| MEIR HAR-TZION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WAVES SURF & SPORT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On August 26, 2008, Meir Har-Tzion ("Har-Tzion" or plaintiff) filed suit against Waves Surf & Sport, Inc. ("Waves" or defendant) [D.E. 1], alleging a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219. The parties agreed to bifurcate the issues of liability and damages [D.E. 36]. On February 25 and February 28, 2011, the court held a jury trial [D.E. 37, 38]. The jury returned a verdict in favor of Har-Tzion [D.E. 39]. Following the verdict, Waves renewed its motion for a judgment as a matter of law or, in the alternative, moved for a new trial [D.E. 38]. Both Har-Tzion and Waves filed post-trial briefs addressing the Rule 50(b) motion and damages [D.E. 46, 47]. Both parties filed responses [D.E. 48, 49]. For the reasons explained below, the court denies Waves's motion for a judgment as a matter of law, denies Waves's motion for a new trial, finds that Waves willfully violated the FLSA, finds that Waves did not act in good faith or reasonably believe that it was not violating the FLSA, and awards Har-Tzion $21,375 in unpaid overtime compensation and $21,375 in liquidated damages for a total of $42,750.

I.

A court should enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Judgment as a matter of

law is proper when there is only one reasonable conclusion as to the proper judgment. U.S. ex rel. DRC, Inc. v. Custer Battles, LLC, 562 F.3d 295, 305 (4th Cir. 2009). A court must review the record as a whole, drawing all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Moreover, a court may not make credibility determinations or weigh the evidence. Id.; Price v. City of Charlotte, 93 F.3d 1241, 1249–50 (4th Cir. 1996). Evidence that is favorable to the moving party, but that the jury is not required to believe, must be disregarded. Reeves, 530 U.S. at 151. Thus, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (quotation omitted).

At trial, Har-Tzion testified that while living in Newport News, Virginia, he received a phone call in March 2006, from Henry Shitrit. Tr. 20. Mr. Shitrit owned the Waves store in Ocean Isle, North Carolina, and wanted Har-Tzion to work at that store for the summer of 2006. Id. at 19–20. Har-Tzion testified that he and Mr. Shitrit agreed that Har-Tzion would work from opening to closing, that he would be paid $15 per hour for the first 40 hours, and time and a half for any overtime hours. Id. at 24–25. They also agreed that overtime would be paid at the end of the summer. Id. at 25. Har-Tzion worked at the Waves Ocean Isle store from late March until the end of September 2006. Id. at 20. He testified that either "Max Gelby" or "Monti" supervised his work. Id. at 32, 57. Har-Tzion had no prior managerial work experience. Id. at 25–26. He received keys to the store, stocked shelves, unloaded trucks, ran the cash register, and cleaned the store. Id. at 26, 45. He denied hiring or firing any employees, but admitted that he distributed applications to job seekers. Id. at 26–27. He also admitted to signing invoices and bills of lading to confirm receipt of some deliveries, but denied having signed the Waves Personnel Policy and Benefit Guide or the Conflict of Interest for Store Managers. Id. at 28, 51, 54. Har-Tzion recalled his general work

hours, that the hours became heavier as the summer approached, that they peaked at 100 hours per week, and that they tapered towards the end of the summer to 65 hours per week. Id. at 35–38. Har-Tzion's testimony concerning his schedule and duties was corroborated by the testimony of his wife, Lynn Harmonay, who testified that she worked with him at the store on holiday weekends. Id. at 5–17.

Waves called four witnesses. Haim Kadoche, who has worked for Waves for twelve years, testified that he co-managed the Ocean Isle store with Har-Tzion for part of the summer. Id. at 67, 70, 75. Lasandra Cobb testified that Har-Tzion hired her to work in the Ocean Isle store and that they worked together for approximately one week. Id. at 80, 82. Mr. Shitrit testified that he hired Har-Tzion to manage the Ocean Isle store for a fixed salary. Id. at 85. Mr. Shitrit also testified that Har-Tzion's hours varied throughout the summer, between 40 and 80 hours per week. Id. at 94, 99. Mr. Shitrit also testified that an individual named Max Gilbey worked for Waves. Id. at 95. Finally, Rachel Shitrit testified that she was the human resources manager for Waves, that Mr. Shitrit hired Har-Tzion to manage the Ocean Isle store, that he was to be paid on a salary basis, that she witnessed Har-Tzion sign the employee handbook and manager conflict of interest forms, and that the same signature appeared on the invoices from the Ocean Isle store. Id. at 101–23. Waves submitted into evidence copies of Har-Tzion's payroll checks, a signature page of their employee handbook, a copy of Har-Tzion's driver's license, a manager conflict of interest form, invoices and bills of lading from the Ocean Isle store, and copies of payroll checks for Kadoche, Cobb, and various hourly employees.

Following a detailed charge, the court submitted the case to the jury who returned a verdict for Har-Tzion. Specifically, the jury found by a preponderance of the evidence that Har-Tzion worked over 40 hours in each week of his employment and that the parties had not agreed that a salary would be compensation for all hours Har-Tzion worked. The jury also found that Waves

3

Case 7:08-cv-00137-D   Document 50   Filed 05/11/11   Page 3 of 8

failed to prove by clear and convincing evidence that they had properly classified Har-Tzion under the executive exemption of the FLSA.

First, Waves claims that the evidence at trial does not support the jury's verdict that Waves had not properly classified Har-Tzion under the executive exemption. Def.'s Br. 4–8. The FLSA overtime provisions do not apply to employees employed in an executive capacity. 29 U.S.C. § 213(a)(1). An employer bears the burden of proving a proper exemption classification by clear and convincing evidence. Desmond v. PNGI Charles Town Gaming, L.L.C., 564 F.3d 688, 691 n.3 (4th Cir. 2009). To prove a proper classification, Waves was required to demonstrate that: (1) Waves compensated Har-Tzion on a salary basis at a rate of at least $455 per week; (2) Har-Tzion's primary duty was management of the store; (3) Har-Tzion customarily and regularly directed the work of two or more other employees; and (4) Har-Tzion had authority to hire or fire other employees. See 29 C.F.R. § 541.100. Har-Tzion's testimony contradicted each element of the executive exemption. Thus, the jury had to make credibility determinations and weigh the evidence in order to resolve the dispute. At this stage, the court may not independently make credibility determinations or reweigh the evidence. Reeves, 530 U.S. at 150. Moreover, a reasonable juror could reject the defendant's evidence and believe the testimony of Har-Tzion and his wife. See Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir. 1992). Therefore, the court upholds the jury's finding.

Next, Waves claims that the evidence does not support the jury's finding that the parties had not agreed that a salary would be compensation for all hours Har-Tzion worked. Def.'s Br. 8–9. Waves argues that because the only evidence that such an agreement did not exist was Har-Tzion's "self-serving" testimony, the court should enter a judgment as a matter of law. Id. Again, Waves asks the court to determine the credibility of witnesses and to weigh the evidence. The court declines. A reasonable juror could reject as "self-serving" the testimony and documentary evidence

4

Case 7:08-cv-00137-D   Document 50   Filed 05/11/11   Page 4 of 8

produced by Waves, find Har-Tzion's testimony credible, and find that no mutual agreement existed. See Lyle, 954 F. 2d at 987. Therefore, the court upholds the jury's finding.

Waves also claims that the appropriate FLSA classification is a question of law for the court and not the jury. Def.'s Br. 11 (citing Icicle Seafood, Inc. v. Worthington, 475 U.S. 709, 714 (1986)). Icicle Seafood established the appropriate standards of review to be used following a bench trial on an FLSA claim. 475 U.S. at 713. Specifically, the Court held that a trial court's factual findings are reviewed under a clearly erroneous standard and its application of the law to those facts is reviewed de novo. Id. However, unlike Icicle Seafood, this case was submitted to a jury with the use of a special verdict form. See Fed. R. Civ. P. 49(a). Moreover, the parties agreed without objection to the special verdict form. See Minute Entry for Jury Trial 1 (Feb. 28, 2011). Furthermore, an issue that presents a mixed question of fact and law may be submitted to a jury using a special verdict form, provided that the jury is instructed on the proper legal standard to be applied. Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1060 (4th Cir. 1976). In light of the jury instructions, the submission of the executive exemption issue to the jury was appropriate. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1269–71 (11th Cir. 2008).

Alternatively, even if Icicle Seafood requires this court to reject the jury's application of the law and apply the jury's factual findings, this court would conclude that the executive exemption does not apply. The executive exemption requires that an employee be paid on a salary basis. 29 C.F.R. § 541.100(a)(1). "Salary basis" means that "the employee regularly receives each pay period ... a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." Id., § 541.602. The jury found that no salary-basis compensation agreement existed. Substantial evidence supports that finding. Therefore, the executive exemption cannot apply. See, e.g., Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 357 (4th Cir. 2011).

5

Based on the facts presented at trial, the jury could have reached more than one reasonable conclusion on each issue. Therefore, the court denies Waves's motion for judgment as a matter of law.

II.

As for defendant's alternative motion for a new trial, the decision to grant or deny a motion for a new trial is within the sound discretion of the court. King v. McMillan, 594 F.3d 301, 314–15 (4th Cir. 2010). If the court finds that the jury's verdict "is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, [it] must set aside the verdict, even if supported by substantial evidence, and grant a new trial." Id. (quotation omitted). In making this determination, the court may weigh the evidence and consider the credibility of witnesses. Id. Conflicting testimony is not grounds for granting a new trial. See, e.g., id.; Dawson v. Wal-Mart Stores, Inc., 978 F.2d 205, 208 (5th Cir. 1992); Taylor v. Va. Metal Prods. Corp., 204 F.2d 457, 458 (4th Cir. 1953) (per curiam). Furthermore, a jury verdict in a trial that involved simple issues and highly disputed facts should generally be left undisturbed. Williams v. City of Valdosta, 689 F.2d 964, 974 (11th Cir. 1982).

Waves contends that the court must set aside the jury's verdict because it is based on false testimony and contrary to the clear weight of the evidence. Def.'s Br. 10–11. Waves claims Har-Tzion's testimony was contradicted by the testimony of its witnesses and its documentary evidence. Id. However, Waves own testimony and evidence suffers from the same alleged bias and self-interest. Furthermore, the trial involved relatively simple issues and highly disputed facts. Because "there is no great weight of the evidence in any direction," Waves's motion for a new trial is denied. See Williams, 689 F.2d at 976 (quotation omitted).

6

III.

The parties agreed to have the court determine damages. To do so, the court initially must determine the appropriate statute of limitations. The FLSA provides two potential limitations periods. For non-willful FLSA violations, a two-year statute of limitations applies. 29 U.S.C. § 255(a). When the violation is willful, a three-year statute of limitations applies. Id. "[O]nly those employers who 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]' have willfully violated the statute." Desmond, 630 F.3d at 358 (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Mere negligence fails to support a finding of willfulness. Id. The employee has the burden of proving an employer's willfulness by a preponderance of the evidence. See id.; Lyle, 954 F.2d at 987.

The court finds by a preponderance of the evidence that Waves (through Mr. Shitrit and Mrs. Shitrit) willfully violated the FLSA. No salary-basis compensation agreement existed between Har-Tzion and Waves. Therefore, Har-Tzion was not an exempt employee. Mrs. Shitrit testified that she had extensive experience as a human resources manager, and knew that paying a non-exempt employee as an exempt manager would violate the FLSA. See Tr. 132. Thus, Waves (through Mr. Shitrit and Mrs. Shitrit) knew that it was violating the FLSA, and its violation was willful. Desmond, 630 F.3d at 358.

Damages for unpaid overtime compensation under 29 U.S.C. § 216 are calculated consistent with the standard overtime provisions of the FLSA. 29 U.S.C. § 207(a). Thus, when an employee did not agree to receive a fixed weekly salary as payment for all hours worked, an employee is entitled to 150% of his regular rate of pay for each hour worked in excess of the standard 40-hour workweek. Id.; see Desmond, 630 F.3d at 357. Here, no agreement for a fixed weekly salary existed. Furthermore, Har-Tzion worked in excess of 40 hours each week of his employment, and a total of 950 hours of overtime. Har-Tzion received a wage of $15 per hour, requiring an overtime

7

wage of $22.50 per hour. Therefore, the court awards Har-Tzion $21,375 in unpaid overtime compensation.

Finally, the court must determine whether an award of liquidated damages is appropriate. Any employer who violates the FLSA is liable to the employee for all unpaid compensation and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b); Lyle, 954 F.2d at 987. Such liquidated damages are "the norm" for violating the FLSA. Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir. 1997). If an employer demonstrates that it acted in good faith and had reasonable grounds for believing that it was not violating the FLSA a court may reduce or eliminate a liquidated damages award. See 29 U.S.C. § 260; Mayhew, 125 F.3d at 220; Lyle, 954 F.2d at 987.

The court finds that Waves has not met its burden of proof. The court credits Har-Tzion's testimony concerning his conversations with Mr. Shitrit, Mrs. Shitrit, and Max Gelby. See Tr. 20–25, 39–41. Moreover, Mrs. Shitrit testified that she had extensive experience as a human resources manager, and knew that paying a non-exempt employee as an exempt manager would be illegal. Id. at Tr. 132. Waves (through Mr. Shitrit and Mrs. Shitrit) knew that Har-Tzion was not exempt from the FLSA, yet did not pay him overtime. Because Waves failed to demonstrate good faith and did not have reasonable grounds for believing that it was not violating the FLSA, the court awards liquidated damages to Har-Tzion in the amount of $21,375.

IV.

In sum, the court DENIES defendant's motion for judgment as a matter of law and alternative motion for a new trial. The court DIRECTS the Clerk of Court to enter judgment in favor of plaintiff for the sum of $42,750.

SO ORDERED. This _11_ day of May 2011.

JAMES C. DEVER III
United States District Judge